## THE CENTENNIAL.

*(Circuit Court, D. Massachusetts.  May 2, 1881.)*

1. DAMAGE TO CARGO — NEGLECT TO PUMP OUT SHIP — DEFECTIVE LIMBERS.

   A vessel is bound to make good any damage to a cargo of sugar which may have occurred through a neglect to pump out the ship, or through a clogging of the limbers by coal dust, or by sugar, or by both coal dust and sugar.

2. SAME — PAYMENT BY UNDERWRITERS — AGREEMENT TO REPAY ANY SUM RECOVERED.

   The payment of the loss by the underwriters, after a libel had been filed by the owners of the cargo, under an agreement that the libellants should repay to the underwriters any sum or sums which they might recover by decree or settlement, in virtue of the unseaworthiness of the vessel, or the negligence of her officers or crew, does not afford a defence to the action.—[ED.

In Admiralty.  Appeal.

*C. T. Russell* and *C. T. Russell, Jr.,* for claimant.

*E. D. Sohier* and *H. M. Rogers,* for libellant.

LOWELL, C. J.  The duty of ascertaining the facts of this case is a difficult and delicate one.  That a great loss has happened is certain, but its causes are so obscure that every possible theory offered to account for it is open to most plausible objections.

The three-masted schooner Centennial sailed from Cardenas, bound to Boston, on the twenty-eighth of May, 1879, with 800 hogsheads of muscovado sugar, of which the greater part was the property of the libellants.  The cargo was properly stowed and well dunnaged.  According to the log-book, and all the evidence of the officers and crew, the pumps were tried every four hours, and the vessel made no water of any consequence until June 3d.  On that day, at 4 o'clock in the afternoon, there was no water in the hold; at 8 o'clock of the same evening there were seven feet and a half of water there, and the ship was apparently in immediate danger of foundering.  Both sets of pumps were worked all that night by all hands, and in 11 hours the water had been lowered two feet.  After this, the crew being exhausted, they kept watch and watch, and the forward pumps alone were kept in operation, and were able to prevent any increase above the five feet and a half until the vessel arrived at Philadelphia, a port of necessity, on the sixth of June.  Here the schooner was pumped out, and her cargo was discharged, and it was found that some of her seams and butts were slack.  No extraordinary injury was dis-

covered.  She was caulked and reloaded, and brought her cargo to Boston, but it had already suffered the damage which the district court has found to be justly chargeable to the vessel.

The libellants introduced evidence tending to show that the schooner was of a model and build unsuited to the heavy cargo of sugar which she undertook to carry, and that the caulking of her seams had been neglected.  The claimants met these allegations; and, upon the whole evidence, the district judge was of opinion that the schooner was, in these particulars, sufficient and suitable for the voyage.  I am of the same opinion.  But behind this is the question, how so much water came into the vessel without being discovered?  The condition of the vessel, when she was examined, would not account for seven feet of water being found in the hold four hours after it had been pumped dry, or found to be dry.  The official surveyors of the district court at Philadelphia so reported, and every witness confirms them.  Two suggestions have been advanced in evidence and in argument to explain the fact:

(1) That the seamen neglected to try the pumps; (2) that the limbers were choked so that the water could not reach the pumps.

Upon the evidence each theory is improbable; but one or the other, it seems, must be true.  If the limbers were stopped, the libellants maintain that it must have been by coal dust, which sifted into them upon the voyage from Scotland; and the claimants insist that the heavy molasses, or liquid sugar, which drains from a cargo of muscovado sugar, might harden, and effect this injurious result.

The sugar owned by the libellant company was insured by the Pacific Insurance Company of New York, and the Phœnix Company of Brooklyn, and after this libel had been filed those companies paid the loss to the libellant company, under an agreement which is made a part of the record, by which the libellant is bound to repay to the underwriters any sum or sums which may be recovered by decree, or settlement, in virtue of the unseaworthiness of the vessel, or the negligence of her officers or crew.

The district judge held that the owners of the ship had not

explained the damage sufficiently to satisfy him that it had occurred by a peril of sea, within the true intent of the bill of lading; and he was inclined to think that the limbers were stopped by coal dust. He further held, that the payment by the underwriters did not affect the case.

It is made my duty, by the statute of 1875, (18 St. 315,) to state the facts and my conclusions of law separately; and the latter alone are subject to review; but, as juryman, I am bound to state only such facts as seem to me, as judge, important to raise the issues of law. In this case I do not consider it to be material to find whether the pumps were neglected, or whether the limbers were clogged by coal dust, or by sugar, or by both coal dust and sugar, if either of these statements of fact is found; because, in my opinion, the ship is liable under either alternative. This is admitted to be the law, if there was any negligence or defect not attributable to the cargo of sugar; but it is equally true if that cargo created the difficulty. If such cargoes usually drain out a part of their molasses, mixed with sugar, and this compound is likely to obstruct the water passage to the pumps, (and this is the evidence for the defence,) then the ship is bound to have limbers large enough, or to provide whatever other means are necessary, to enable the vessel to be kept free of water.

I find, as matters of fact:

(1) That the vessel was reasonably fit for the voyage in respect to her build and her caulking; (2) that the claimants (the ship owners) have failed to prove distinctly that the damage to the cargo was caused by perils of the sea; (3) that the damage was caused either by neglect of the pumps, or by the clogging of the limbers by coal dust, or by sugar, or by both; (4) that the underwriters have paid the loss to the libellants, and have made with them the agreement above mentioned.

And I find, as matters of law:

(1) That the vessel is bound to make good to the libellants their damage, whether it occurred through a neglect to pump out the ship, or through the clogging of the limbers by coal dust, or by sugar, or by both coal dust and sugar; (2) that the arrangement between the libellants and the underwriters does not afford a defence to this action.

Decree affirmed.